GEO. W. PRITCHARD v. E. T. WARNER'S ASSIGNEE ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—349.]

**No Waiver of Lien by Execution of a Note.**

> The execution of a note does not constitute a waiver of a lien on land reserved for purchase-money.

**Protection of Purchaser.**

> To entitle a purchaser to protection he must not only be a bona fide purchaser without notice and have paid the consideration, but must be the purchaser of the legal title as well, for even the purchaser of an equity is bound to take notice of and is bound by a prior equity, and between equities the rule is that he who has the prior equity in point of time is entitled to a like priority in point of right.

### APPEAL FROM CARTER CIRCUIT COURT.

#### October 14, 1882.

OPINION BY JUDGE HARGIS:

On the 13th of January, 1873, Evan T. Warner bought of H. T. Stewart and W. R. Blankenship two tracts of land owned by them separately for which he agreed to pay them $9,351. He paid them some of the purchase-money and executed to them the promissory notes of Hocker, Warner & Co. for the remainder.

The appellant, Pritchard, sold his land to Stewart and Blankenship and they agreed with him to let him have as much of their claim for purchase-money on Warner as would pay him for his land.

Pritchard, Stewart, Blankenship and Warner met on the 28th day of March, 1874, and perfected the arrangement for the transfer to Pritchard by Stewart and Blankenship of enough of their purchase-money claim on Warner to pay Pritchard what they owed him for his land, the sum being $5,025, Warner agreeing that Pritchard should have a lien on the land bought by him of Stewart and Blankenship. Warner advised them that it was necessary for Stewart and Blankenship to draw orders on him for the amount and then and there wrote the orders himself, which were dated back, but for what reason does not appear clearly and which was not noticed by Pritchard, Stewart or

Blankenship when the orders were signed by them and delivered to Pritchard, who handed them back to Warner who had just written them in the presence of all the parties.

Pritchard released Stewart and Blankenship from their obligation to him for the purchase-money they owed him for his land, and Warner instead of paying Pritchard the whole sum thus equitably assigned to Pritchard executed to him the promissory note of Warner & Co. for $5,000 and paid him $25 in money and store goods. On the 29th of September, 1879, Warner executed a mortgage to his brother-in-law, Hocker, on the lands bought by him from Stewart and Blankenship for the alleged purpose of indemnifying Hocker as his surety on certain paper executed by Warner to the Farmers' & Traders' Bank of Lexington. Warner, Hocker and the bank failed and took the benefit of the bankrupt law.

In the suit by Pritchard on his note for $5,000, seeking to enforce a lien on the lands sold by Stewart and Blankenship to Warner for its payment, the assignee of the bank and Warner and Hocker dispute his right to a lien and insist that Warner in legal effect borrowed the $5,000 from Pritchard and paid it to Stewart and Blankenship and by that sort of imaginary transition of money discharged the lien on the land; that Hocker is an innocent purchaser for value, and on that score the bank as pledgee of the mortgagor ought to be given prior right over Pritchard. Many of the facts strongly affecting this whole transaction showing unfairness on the part of Warner will not be noticed; some only of the main features of the case will receive attention.

The title bonds of Stewart and Blankenship were taken by Warner to himself alone, yet the notes he executed to them for the purchase-money were signed by Hocker, Warner & Co. and the note sued on by Pritchard was signed by E. T. Warner & Co. Now Warner claims that no such partnership existed at the dates of these transactions, that he simply used these firm names in anticipation of the fact that a partnership was talked of and contemplated by them. This, to say the least of it, would give Warner and his contemplated partners all advantages of strangers with whom Warner transacted any business in case his ventures should prove disastrous or he should desire to deceive them.

He drew checks on the bank and signed the firm name of Hocker, Warner & Co. and the bank paid them. If he showed to

Hocker the notes which he took up, marked paid to Stewart and Blankenship, as an inducement to Hocker to accept the mortgage, Hocker as well as the bank had notice of the practices of Warner in using these confusing firm names, said now not to be realities when it is too late to protect persons from injury inflicted by their use.

The evidence establishes the fact that Warner paid nothing to Pritchard when the note was executed except $25 and agreed that Pritchard should have a lien on the land bought by him of Stewart and Blankenship.    Stewart, Blankenship and Pritchard all testify to these facts, and they are supported by the addition made to the note at Pritchard's instance.    The note had been written by Warner in the usual form when Pritchard objected to it, and Warner admits that he agreed to the addition which Pritchard dictated and which is in this language: "The money is money ordered to be paid him by Blankenship and Stewart, it being due them on account of lands purchased from them."    This part of the note shows conclusively that Warner still owed Stewart and Blankenship for the land and that they ordered him to pay $5,025 of the purchase-money to Pritchard, whom they thus paid for his land sold to them.    Warner, instead of paying the money so ordered, executed the note of Warner & Co. therefor, Warner & Co., as Warner swears, meaning himself alone.

The order of Stewart and Blankenship amounted to nothing more in fact than an equitable assignment of their demand on Warner for the purchase-money, and the lien followed the assignment as a necessary incident and its continuance was insured by the agreement of the parties.    The execution of a new note for the purchase-money to Stewart and Blankenship would not have amounted to a waiver of their lien on the land, and we do not see, in equity and good conscience, how the acceptance of a note by Pritchard for a part of the purchase-money assigned to him can operate either as a payment, novation or waiver of the lien expressly preserved by the contract of the parties.    It can not, therefore, be successfully maintained on any equitable principle that Pritchard has no lien as between himself, Warner, Stewart and Blankenship.    *Honore's Exr. v. Bakewell,* 6 B. Mon. (Ky.) 67; *Bank of America v. McNeil,* 10 Bush (Ky.) 54; *Tiernan v. Thurman,* 14 B. Mon. (Ky.) 277.

The only question that remains is, Did the mortgagee, Hocker, have actual or constructive notice of the lien or is he in a position

48

to claim the protection of a court of equity? It is contended that Pritchard put it in Warner's power to present to Hocker the notes given by him to Stewart and Blankenship and which were delivered by them to Warner under the arrangement, and thereby lead Hocker to believe they had been paid and so impose on him.

A sufficient answer to this position is easily found. Hocker only bought an equity under the mortgage, as the legal title was and is in Stewart and Blankenship, whose right to a lien for any unpaid purchase-money due them or their assignee was indisputable, and this Hocker is presumed to have known. The rule being that to entitle a purchaser to protection he must not only be bona fide, without notice, and have paid the consideration, but be the purchaser of the legal title, "for even the purchaser of an equity," says Mr. Story, "is bound to take notice of, and is bound by, a prior equity, and between equities, the established rule is, that he who has the prior equity in point of time, is entitled to the like priority in point of right." 2 Story's Eq. Jur. (11th ed.) § 1502; *Vattier v. Hinde*, 7 Pet. (U. S.) 252, 8 L. ed. 675.

It was Hocker's duty to know, no matter what Warner represented about the payment of the purchase-money, that it was paid or the lien for it released, unless some fraud or laches on the part of the holders of the demand for the purchase-money exonerated him from such duty. If Hocker had acted with ordinary care Warner could not have misled him. When Warner presented the notes which he had gotten from Stewart and Blankenship with the statement, if he did so, that he had paid them off, there on their very face was his own name as a purchaser and certainly he ought to have inquired, if he was not in fact a purchaser with Warner, "Why did you use my name in buying this land or executing notes for it? Why have you not the legal title if you have paid for it?" These questions put to the vendors, if they had failed to elicit the truth from Warner, would have disclosed the nonpayment of the purchase-money and the existing equity between Pritchard and Warner.

To this may be added that Warner does not testify that he told Hocker that the purchase-money was paid in any other way than the facts of this record show, and Hocker takes care not to testify at all. Had he been an innocent purchaser without notice the bank and his own interest would have demanded that he testify and say he had no notice. We are clearly of the opinion that Hocker

should be treated as having actual notice of the whole transaction and his rights declared superior to those of Pritchard, who has a lien on the land described in the pleadings and is entitled to have it enforced for the purchase-money and legal interest thereon.

The promise of Warner to pay ten per cent., while it is enforcible against Warner, constitutes no part of the purchase-money equitably assigned by Stewart and Blankenship, except as to six per cent. which is the original purchase-money bond.

Wherefore the judgment is *reversed* and cause remanded for further proceedings consistent with the principles of this opinion.

*E. F. Dulin, K. F. Pritchard, W. C. Ireland, for appellant.*
*Tarleton & Buckner, for appellees.*